Minquadale Civic Association, Ervin S. Jester,
Edward Nilan and Ethel Marie Nilan,
Plaintiffs,

*vs.*

Harry O. Kline and Regina Kline, Harry O. Kline doing busi-
ness as H. O. Kline Transfer, Lancaster Transportation Com-
pany, Drake Motor Lines, Yale Motor Lines, Lahn Transporta-
tion Company, and Shurman Trucking Co.,
Defendants.

*New Castle, July 30, 1965.*

*Henry A. Wise, Jr.,* and *Michael F. Tucker,* of Wise & Suddard, Wilmington, for plaintiffs.

*Gerald Z. Berkowitz* and *Samuel H. Lewis,* of Wahl, Greenstein & Berkowitz, Wilmington, for defendants Harry O. Kline and Regina Kline and Harry O. Kline, doing business as H. O. Kline Transfer.

MARVEL, Vice Chancellor: Plaintiffs seek a permanent injunction against the carrying on by the defendant Harry O. Kline of an allegedly forbidden commercial enterprise in a residential district, it being charged that such operation violates the provisions of a zoning classification duly promulgated by the Levy Court of New Castle County on September 28, 1954. While the wife of Harry O. Kline is

also a named defendant and has appeared, she has taken no part in the operation of her husband's business, being merely a joint owner of the business premises. Plaintiffs also pray for a permanent injunction abating a claimed nuisance allegedly resulting from the carrying on of the business involved, namely the operation of a trucking center and warehouse as well as a parking and service area for passenger buses on Hazeldell Avenue in Minquadale. Also sought are damages in the sum of $50,000, which, it is claimed, have been sustained by adjacent residents of Minquadale (on whose behalf the corporate plaintiff filed this action) as a result of the carrying on of the Kline business activities.

Plaintiffs are the Minquadale Civic Association, a Delaware corporation which purports to represent property owners in the community of Minquadale, and several residents of that community. Leave was granted after trial for the joining of such individual plaintiffs, all of whom reside in the district in which the Kline business is located. The named defendants are Harry O. Kline doing business as H. O. Kline Transfer, his wife, Regina, and several trucking companies associated with Mr. Kline's business. However, none of the latter has been served nor have any of them entered an appearance in this case. The appearing defendants' premises are located at 305-27 East Hazeldell Avenue, Minquadale, Delaware. Their answer, which neither questions the capacity of the corporate plaintiff to sue nor pleads any special defenses, admits that the lots in question on Hazeldell Avenue are owned by the Klines but denies any actionable violation of a zoning regulation or the commission of a nuisance.

Minquadale is essentially a residential community of modest one family homes, most of which appear to have been built between the two world wars. The entire area here involved, which extends in an easterly direction from the DuPont Highway towards the approaches to the Delaware Memorial Bridge, is zoned R-1-C, a classification which contemplates, with certain exceptions not here relevant, single family homes on lots of a minimum size of 6,500 square feet, or the type of housing which predominated in the district at the time zoning was adopted. However, prior to the enactment of a County Zoning Code in 1954, some commercial enterprises had become established in the area. A grocery store is located across the street from the Kline

establishment and nearby is a firm which is engaged in the business of supplying and servicing portable sanitary devices, the vehicles and other equipment used in such business being clearly visible to anyone driving or walking on Hazeldell Avenue.

Jurisdiction to determine the zoning question here in issue derives from 9 *Del.C.* §2619(d), which provides, in part, that:

> "In case * * * any land is or is proposed to be used, in violation of this chapter or of any regulation or provision of any regulation, or change thereof, enacted or adopted by the Levy Court under the authority granted by this chapter * * * any owner or occupier of real estate within the district or within an adjoining district in which such * * * land is situated, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement or any other appropriate action or actions, proceeding or proceedings to prevent, enjoin, abate or remove such unlawful * * * use."

First of all there is no doubt but that the individual plaintiffs qualify as owners or occupants "within" the R-1-C district in question and thus may seek relief against an alleged zoning violation in their district. According to the evidence adduced at trial, the property on which Mr. Kline now operates his trucking and freight business consists of twenty-two lots, each lot having a frontage of twenty feet on Hazeldell Avenue. Testimony concerning the use of these lots during the past twenty-five years or so discloses that prior to the Second World War the six westerly lots now owned by Mr. Kline were owned by a Mr. Franklin Baker. However, the remaining lots presently owned by Mr. Kline were then the property of Mrs. Nora Baker, Mr. Franklin Baker's mother. Located on the original six lot tract is a garage built by Mr. Baker in the early 1940's and used by him as a base of operations for his trucking business. It thereafter became the central point of Kline's business upon his acquisition of the six westerly lots in September, 1953.

In the course of the operation of his business, Franklin Baker found it convenient, if not actually necessary, to use his mother's adjoining land for the purpose of maneuvering his trucks and other

vehicles into his easterly loading platform due to the fact that the distance between the garage's side loading platform and the boundary of his mother's lots was less than the length of the trucks and trailers used in the business. Other portions of Mrs. Nora Baker's premises were used to park vehicles. It appears, however, that this use of Mrs. Nora Baker's premises by her son's business was permissive. The Baker business was carried on in Minquadale until some time in 1952 when Franklin Baker went bankrupt. What could be salvaged from the business was then transferred to Middletown, Delaware on December 23, 1952, and following foreclosure of a mortgage on the garage premises by Equitable Trust Company, title to the six lots involved was conveyed to the appearing defendants by deed dated September 11, 1953. The remaining sixteen lots, on the other hand, continued to be the property of Mrs. Nora Baker until July 1955, although it appears that from the start of Mr. Kline's operations he resorted to Mr. Baker's expedient of using a portion of Mrs. Nora Baker's premises for the purpose of maneuvering his trucks into the loading platform on the east side of what had now become the Kline garage and warehouse. However, unlike the situation existing during the operation of the Baker trucking business, the defendant Kline was never granted permission to make use of Mrs. Baker's premises, nor was such use acquiesced in.

In September 1954, the Levy Court of New Castle County promulgated a comprehensive zoning code for the County under the authority granted it by 9 *Del.C. Chap.* 26, the area here in dispute being classified as a R-1-C (single-family-residence) use district with minimum lot areas of 6,500 square feet. A trucking terminal is not a permitted use in a R-1-C district.

In July of 1955, the defendant Kline purchased the adjoining Nora Baker lands, and from the date of such acquisition until the present time defendant has used these premises in the course of carrying on his trucking business. Moreover, after acquiring this additional space, Mr. Kline expanded the scale of his operations so as to include freight transfers and the like with the connecting carriers here named as defendants. He also used the additional lands acquired from Mrs. Baker for the repairing and storing of vehicles and equipment used in

his business. By defendants' own estimate at least twelve freight-carrying trucks a day presently use his terminal facilities.

■ Passing over the question of nuisance for the present, the zoning aspect of this case would appear to be controlled by the law of non-conforming uses. A non-conforming use is defined as "[a] building, structure, or use of land existing at the time of enactment of * * *" the Zoning Code "* * * which does not conform to the regulations of the district in which it is located." See *Zoning Code of New Castle County, Article II—Definitions* (1954). "[A] *non-conforming* use may continue to be used for the same non-conforming purpose, nor shall any change of title or of right to possession affect such continuation of an existing use." *Zoning Code of New Castle County, Article XVII, §1* (1954). Furthermore, according to what would appear to be the better reasoned cases on the subject, a non-conforming use may be intensified where normal growth and expansion reasonably require such intensification. Compare *State v. Szymanski, 24 Conn.Super.* 221, 189 *A.2d* 514, and *Humphreys v. Stuart Realty Corp., 364 Pa.* 616, 73 *A.2d* 407.

The defendant Harry O. Kline, in urging the Court to treat both his garage lots and those lots later acquired from Mrs. Baker as one non-conforming use, cites the *Zoning Code of New Castle County* as follows: "*Lot*: A parcel of land in common ownership and occupied by one principal building or use * * *, including such *yards* or open spaces as are arranged or designed to be used in connection with such buildings." *Article II—Definitions.* On the basis of such definition defendant argues that he may extend the non-conforming use established for the six lots acquired from Franklin Baker over the entire "lot", such extension allegedly being the result of the natural growth and expansion of his business. While there are established rules governing the extension of a non-conforming use, defendants' contentions are founded on a false premise. The Zoning Code requires that a parcel must be "in common ownership" to constitute a "lot", and such ownership did not exist as to the entire tract here involved when the Zoning Code was adopted in 1954, the Kline defendants at the time being the owners of only the garage premises.

Inasmuch as the two parcels must be considered separately, it is obvious that a valid non-conforming use exists only as to the original garage premises. It is clearly established on the record that Mr. Kline purchased and used the garage premises as the center of trucking operations prior to the adoption of the Zoning Code and he is therefore entitled to claim a valid non-conforming use as to that part of his business property. Moreover, I am of the opinion that the growth of defendants' business at the garage premises subsequent to the enactment of the Code constituted normal expansion and that he is entitled to protection against interference with his business operations there carried on, on the basis of the doctrine of non-conforming use. However, in view of the zoning classification in force and effect in the district here involved since September 1954, it would appear that defendant has no legal right to use the former Nora Baker premises for a commercial purpose such as trucking. Defendant did not own these lots when the Zoning Code was enacted and therefore may not successfully claim that a non-conforming use existed at that time. In other words, the use made by Mr. Kline of Mrs. Baker's lands from the time he acquired the garage property constituted a trespass.

Defendants contend, however, that the use made of the premises by Franklin Baker prior to his bankruptcy established a non-conforming use which enures to "Mr. Kline's" benefit regardless of his trespass, contending that under the Zoning Code the right to a non-conforming use is a vested right which runs with the land. In other words, it is argued that such right does not terminate when a property is sold or leased, *Zoning Code of New Castle County, Article* XVII, §1 (1954). It is further contended that the period of discontinuance of use for a commercial purpose from December 1952 to 1955 does not preclude Mr. Kline's user because a discontinuance, in order to interrupt the establishment of a non-conforming use, must amount to abandonment, and abandonment requires as intent to abandon. Thus, it is argued that Franklin Baker could not have had such intention because his discontinuance of a trucking business was involuntary, being the result of bankruptcy. This principle relied on by defendants is found in the Zoning Code which provides that "* * * Whenever a *non-conforming use* has been discontinued for a period of

one year, such use shall not thereafter be reestablished, * * * except that when such discontinuance is on account of any cause beyond the control of the owner or tenant, the period of abandonment shall for the purposes of this Code date from the termination of such cause." *Zoning Code of New Castle County, Article* XVII, §1 (1954). While at first glance defendants' argument has appeal, it is obvious that the non-conforming use contemplated in the section must have been in existence when the Zoning Ordinance was enacted. In the case at bar the use made of his mother's premises by Franklin Baker in operating a trucking business had ceased for a period of almost two years before the adoption of the Zoning Code.

■ ■ Defendants also contend that Franklin Baker, Jr., who had become engaged in the Baker trucking business after its removal to Middletown, was accustomed to parking one of his trucks on his grandmother's premises at Minquadale in the course of carrying on such trucking business during the years 1953 and 1954. It is accordingly argued that such use of the premises established a non-conforming use. Such argument, however, fails to take into account the rule that a casual or occasional use of property, prior to the enactment of a zoning ordinance, will not serve to create a valid non-conforming use. Compare *Durning v. Summerfield,* 314 Ky. 318, 235 *S.W.2d* 761. And the record here discloses that the truck in question was parked on the Baker premises only at night when Frank Baker, Jr., who lived in the neighborhood, came home from his work in Middletown.

■ ■ Defendants' final contention is that they have a right to extend a non-conforming use of the garage premises to include property formerly owned by Mrs. Nora Baker because natural growth and expansion of the business require it. However, the better reasoned cases which deal with the doctrine of the expansion of a non-conforming use hold that such doctrine does not benefit adjoining lands purchased after the enactment of a zoning ordinance. Compare *Jensen's Inc. v. Town of Plainville,* 146 *Conn.* 311, 150 *A.2d* 297. Accordingly, the carrying on of a commercial operation on the former Nora Baker lots in Minquadale must be permanently enjoined.

 I turn now to plaintiffs' claim that defendants' business activities on Hazeldell Avenue constitute a nuisance. Plaintiffs contend that Mr. Kline's and his associates' operation of heavy trucks and business on Hazeldell Avenue as well as on the lots here in controversy constitutes a private nuisance, such vehicles being the alleged source of excessive vibration, noise, and noxious odors. And while there is testimony to the effect that vibrations allegedly set up by Mr. Kline's and his associates' trucks caused cracks in the walls of the individual plaintiffs' homes, such conclusions were obviously mere conjecture. Furthermore, it is apparent that many vehicles other than those of defendant and his associates have used East Hazeldell Avenue over the years. In short, no real effort was made to establish by competent testimony that defendants' trucks caused the damage complained of. In fact, such claimed damage may well be attributable to other factors such as the settling of foundations, weather conditions, as well as other forces which customarily cause deterioration in buildings. In other words, plaintiffs failed to adduce proper proof to support their claim based on allegedly excessive vibration. Compare *Midway Realty Corp. v. Larsen,* 38 *Del.Ch.* 511, 154 *A.2d* 887. By the same token, the testimony adduced at trial fails to establish plaintiffs' claims based on noise and noxious odors allegedly attributable to the operation of defendants' vehicles. While the individual plaintiffs testified that the noise and odor involved in defendants' business were injurious, other property owners, not parties to this litigation, testified that they did not find defendants' activities unusual or bothersome. In this age of motor vehicles powered by oil or gasoline, noise and exhaust fumes must be passively tolerated in most populated areas. Moreover, there is testimony of record that Mr. Kline has responded to situations which have fostered minor complaints by taking prompt remedial action. I conclude that the record clearly fails to establish the existence of an actionable private nuisance as contended by the individual plaintiffs and such claim will be dismissed.

An order in conformity with the above may be presented on notice.