Michael AMICO, Plaintiff,

v.

NEW CASTLE COUNTY, a political sub-
division of the State of Delaware, Com-
mission on Adult Entertainment Estab-
lishments, an entity within the State of
Delaware, Department of Administrative
Services, Division of Business and Occu-
pational Regulation, and the State of
Delaware, Defendants.

Civ. A. No. 82–513.

United States District Court,
D. Delaware.

Aug. 12, 1983.

As Amended Sept. 23, 1983.

See also 553 F.Supp. 738.

Philip B. Beardsley, Wilmington, Del., for plaintiff; Lewis H. Robertson, of Levy & Robertson, Asbury Park, N.J., of counsel.

Jonathan B. Taylor, and Brian A. Sullivan, of New Castle County Law Dept., Howard M. Berg, and Stephen F. Dryden, of Berg and Associates, Wilmington, Del., for defendant, New Castle County.

John J. Polk, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants,

State of Del. and Com'n on Adult Entertainment Establishments.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In this action brought under 42 U.S.C. § 1983, the plaintiff Michael Amico contends that New Castle County and the State of Delaware have unconstitutionally burdened his first amendment rights and the first amendment rights of the citizens of New Castle County by refusing to issue him a permit to open an adult entertainment establishment. Various motions are presently before the Court. The defendant, New Castle County, has moved the Court to dismiss the plaintiff's action based on Fed. R.Civ.P. 12(b)(1), 12(b)(7) and 17(a). The plaintiff has asked this Court to grant summary judgment pursuant to Fed.R.Civ.P. 56(a).

The plaintiff desires to open an adult entertainment center in New Castle County, Delaware. At this adult entertainment center, Amico intends to sell books, magazines, films and other sexually oriented materials. In addition, he intends to offer to the residents of New Castle County live entertainment of a sexually explicit nature. On May 30, 1978, Amico formed Traxx Philadelphia Limited, Inc. (hereinafter "Traxx"), a Pennsylvania corporation, as a mechanism to operate his proposed business. After viewing various possible locations in the New Castle County area, the plaintiff decided to locate his adult entertainment center at 4010 North Du Pont Highway. In 1978, the plaintiff entered into an oral lease with the owner of 4010 North Du Pont Highway. In 1981 and again in 1983, this lease was renewed through a written lease agreement signed by the landowner and Traxx.[1]

The Traxx corporation has paid the rent on these premises throughout the leasehold period. Although Mr. Amico is the sole stockholder and director of Traxx, he himself has not expended any funds to finance the corporation. In his deposition, the plaintiff stated that Brighton Enterprises, Inc. (hereinafter "Brighton Enterprises"), a Pennsylvania corporation, supplied most, if not all, of the money needed to maintain the lease. Amico Deposition at 32. The plaintiff has stated, however, that he intends to reimburse Brighton Enterprises once he is permitted to open his establishment. See Docket Item ("D.I.") 59.

As of this date, this establishment at 4010 North Du Pont Highway has never been open for business. In December of 1978, the plaintiff applied to the Delaware Commission on Adult Entertainment Establishments to obtain a license to operate an adult entertainment center. On January 17, 1979, the Commission unanimously adopted an order denying the plaintiff's license application.

The State Commission denied the plaintiff's application because the plaintiff was not in compliance with New Castle County Ordinance 23–31(38). This ordinance, adopted by the New Castle County Council on April 13, 1977, provided the following:

Massage parlors which provide services on and/off premises, adult bookstores and adult entertainment centers shall not be permitted within 500 feet of any property used solely for residential purposes or within 2800 feet of a school, church or other place of worship. No massage parlors, adult bookstores, and/or adult entertainment centers shall be permitted within 1500 feet of another.

Ord. 23–31(38) further restricted adult entertainment establishments to areas zoned C–1 (neighborhood shopping). The Commission denied the plaintiff's application because Amico's proposed adult entertainment center admittedly would be located within 500 feet of property used solely for residential purposes.

---

1. The lease in actuality was signed by Anthony Trombetta who was given authority by Amico, President of Traxx, to sign on behalf of Traxx.

While Amico appealed the Commission's decision to the Superior Court of Delaware,[2] New Castle County made important changes in its laws regulating the licensing of adult entertainment establishments. On August 12, 1980, New Castle County Ord. 23–33(13) was adopted which amended Ord. 23–31(38). Ord. 23–33(13) reads in pertinent part:

(13) Massage parlors which provide services on and/or off premises, adult bookstores, and adult entertainment centers shall be permitted as follows:

(a) No such uses shall be permitted within 500 feet of any property used solely for residential purposes.

(b) No such uses shall be permitted within 2800 feet of a school, church or other place of worship.

(c) No such uses shall be permitted within 1500 feet of each other.

(d) Prior to initiation of such uses, special permit to operate such uses shall be obtained from the County Council. Council shall grant such a permit following a public hearing if it is determined that the neighborhood uses will not be detrimentally affected by granting such a permit and the proposed use meets the distance requirements cited in Subsections 13(a), (b) and (c). Any person aggrieved by a decision of the County Council shall have the right to Appeal to the Superior Court.

Further, Ord. 23–33(13) restricts adult entertainment establishments to areas zoned C–3 (general business). C–3 zones are much less numerous in New Castle County than are C–1 zones.

At the present time, New Castle County has not granted Mr. Amico a permit[3] because Amico's proposed establishment violates Ord. 23–33(13)(a) in that it continues to remain located within 500 feet of property used solely for residential purposes. On December 15, 1982, the Court ruled that the issue of whether the plaintiff's first amendment rights were being infringed was ripe for the Court's determination. Further, the Court ruled that it would not abstain from hearing the merits of this action.[4] Consequently, the Court will now discuss and rule upon the merits of the pending motions.

The defendant's motions arise out of information gathered during the deposition of Michael Amico. During that deposition, the defendant learned, *inter alia,* that Amico intended to run his business through a corporate artifice, Traxx, that Brighton Enterprises, a company involved in the business of selling various materials used in adult entertainment centers, paid the rental on the premises at 4010 North Du Pont Highway, and that Anthony Trombetta, an employee of Brighton Enterprises, was heavily involved in the operation of Traxx. First, the defendant argues that the plaintiff has no constitutional standing to bring this suit. Second, even if Amico did have standing to raise these issues, he is not the real party in interest pursuant to Fed.R.Civ.P. 17(a). Third, the defendant contends that even if the precepts of Rule 17(a) are satisfied, the Court, in the interests of justice, should involuntarily join Traxx and Brighton En-

---

**2.** A more detailed recitation of the facts concerning the plaintiff's attempts to obtain a license from the State of Delaware is set out in the Court's Opinion dated December 15, 1982.

**3.** In order to open an adult entertainment establishment in the State of Delaware, the applicant must seek a state license from the Delaware Commission on Adult Entertainment Establishments. The Delaware Commission, however, will not grant a license until the applicant satisfies 24 *Del.C.* § 1610(a) which reads in pertinent part:

[E]ach applicant or licensee seeking a license or renewal must affirmatively establish with-

in their application that the location or proposed location of the place of business is in compliance with all applicable laws and ordinances.

The effect of this statute is that Amico cannot obtain the state license necessary to the opening of his business until he receives a permit from New Castle County demonstrating that he has complied with the applicable New Castle County regulations.

**4.** *See Amico v. New Castle County, et al.,* 553 F.Supp. 738 (D.Del.1982).

terprises as plaintiffs. All of the defendant's arguments are without merit.

■ The plaintiff clearly has standing to contest the validity of the New Castle County Zoning Ordinances. In the context of a challenge to a land use regulation, the test of the plaintiff's standing is whether he has alleged "specific, concrete facts demonstrating that the challenged practices harmed him and that he personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). In *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), for example, the Metropolitan Housing Development Corporation ("MHDC"), a developer in the business of building low and moderate income housing, desired to challenge an Arlington Heights Zoning Ordinance that prevented the MHDC from building low income housing. *Id.* at 256, 97 S.Ct. at 559. Using the *Warth* test, the Supreme Court concluded that, even though the MHDC did not own the land on which they intended to build low income housing and even though the MHDC still had not secured the necessary financing to begin construction on the project, the MHDC had standing to challenge the zoning ordinances because the MHDC had demonstrated an injury that was "likely to be redressed by a favorable decision." *Id.* at 262, 97 S.Ct. at 561, *citing Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). In a footnote, the Court made clear that a party does not have to own the property in question in order to challenge a zoning ordinance affecting that property. 429 U.S. at 262 n. 8, 97 S.Ct. at 561 n. 8.

■ The defendants in the instant case seemingly argue that the plaintiff Amico does not have standing because his corporation, Traxx, and various individuals associated with Traxx and Brighton Enterprises, were involved in securing and financing the lease arrangement. This argument is incorrect. Amico has applied for a license to operate an adult entertainment center at 4010 North Du Pont Highway. Even if we assume that Amico's interest in the lease of those premises is simply as a beneficiary to an agreement between two separate parties, the plaintiff will gain a tangible and distinct benefit if this Court were to rule the zoning ordinances at issue unconstitutional. No one disputes that Amico will be intimately involved in the operation of this entertainment center. Amico clearly has a personal stake in this litigation that will be affected by a decision of this Court. If the ordinances are declared unconstitutional, Amico will receive a license that will allow him to operate a business at 4010 North Du Pont Highway. As in *Arlington Heights,* Amico need *not* demonstrate that he *owns* the land that is subject to the zoning ordinances but only that he has a significant interest in the outcome of the court procedure. Because he does have this interest, the plaintiff has standing to challenge the ordinance. *See also Postscript Enterprises, Inc. v. Whaley,* 658 F.2d 1249, 1251–52 (8th Cir.1981); *Venuti v. Riordan,* 496 F.Supp. 1255, 1257 (D.Mass.1980).

■ The defendant further contends that this action should be dismissed pursuant to Fed.R.Civ.P. 17(a). Rule 17(a) provides in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The defendant contends that Traxx and Brighton Enterprises are real parties in interest and because the plaintiff has not added these parties within a reasonable period of time, the action should be dismissed. The Court disagrees.

The Court previously determined that Amico has standing. It is well settled that

"once a party is found to have standing to raise a constitutional point, that ruling disposes of any real party in interest objections as well." *Apter v. Richardson,* 510 F.2d 351, 353 (7th Cir.1975), and authority cited therein. Because Amico has standing to challenge the zoning ordinances, the defendant's real party in interest argument is meritless.

Even if Amico did not have standing to challenge the New Castle County Ordinances, and it were conclusively proven that Traxx and Brighton Enterprises are the real parties in interest, the Court would still rule that Amico could pursue this action. Pursuant to the precise language of Fed.R. Civ.P. 17(a), the plaintiff Amico has filed an agreement (D.I. 59) which manifests that Brighton Enterprises and Traxx both ratified the commencement of Amico's suit, that both corporations agreed to be bound by the final determination of this suit, and that both assigned any interests they may have in the premises located at 4010 North Du Pont Highway to Amico. This type of ratification made pursuant to Rule 17(a) consistently has been held adequate to protect the interests of the defendants. *See, e.g., deVries v. Weinstein Int'l. Corp.,* 80 F.R.D. 452, 458–59 (D.Minn.1978); *James v. Nashville Bridge Co.,* 74 F.R.D. 595, 597 (N.D.Miss.1977); *Pace v. General Electric Co.,* 55 F.R.D. 215, 219 (W.D.Pa.1972).[5] Consequently, the requirements of Rule 17(a) have been satisfied.

█ Finally, the defendant argues that this case should be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) and 19(a). Rule 12(b)(7) permits a pleader to raise by a motion for dismissal the failure to join a party under Rule 19. Rule 19 provides in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Although the defendant requests the Court to dismiss this action based on Rule 19(a), they have not presented any reasons why they believe Rule 19(a) may be applicable. In fact, understandably their brief to the Court (D.I. 61) cites to no case or makes no argument relating to Rule 19(a). Rule 19(a) is clearly inapplicable.

First, the plaintiff can gain complete relief without the joinder of Traxx and Brighton Enterprises. Traxx and Brighton Enterprises have nothing to do with Amico's right to receive a license from the State of Delaware and New Castle County. Second, neither Traxx nor Brighton Enter-

---

5. The defendant argues that, because the agreement states that Traxx and Brighton Enterprises are only bound by a final determination of the present suit, the agreement does not adequately protect the defendants. If the plaintiff was to lose his summary judgment motion, the defendants argue, nothing would prevent Traxx or Brighton Enterprises from bringing another suit and another summary judgment motion. Even though the defendants' argument is meritless for many reasons including reasons of res judicata, the Court need not discuss this problem for reasons that become clear later in the Opinion.

The defendant further argues that the agreement violates 28 U.S.C. § 1359. Section 1359 states:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

The plaintiff brought this suit under 42 U.S.C. § 1983. This Court has jurisdiction to hear cases brought under that statute. *See* 28 U.S.C. § 1331. It would have this jurisdiction no matter which parties were named as plaintiffs. Consequently, the plaintiff has not collusively or improperly invoked the jurisdiction of this Court. The defendants' argument is frivolous.

prises claim an interest "relating to the subject of the action." On the contrary, Traxx and Brighton Enterprises specifically disclaim any interest. Consequently, by the very words of the Federal Rule, Rule 19(a) is inapplicable. In conclusion, the defendants' Motions to Dismiss made pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(7), and 17(a) are denied.

The Court will now turn to the plaintiff's Motion for Summary Judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may enter summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Court of Appeals for the Third Circuit has characterized summary judgment as a "drastic remedy" and often has held that courts are "to resolve any doubt as to the existence of genuine issues of fact against the moving party." *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981); *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). Further, "any reasonable inferences from the facts must be resolved in favor of the parties against whom the judgment [may be] entered." *Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters and Joiners,* 676 F.2d 81, 84 (3d Cir.1982).

■ As a preliminary matter, it is the defendants' contention that if the plaintiff has standing, he only has standing to challenge New Castle County Ord. 23–31(38) and not Ord. 23–33(13). The defendants argue that under the standards set out in *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975), the plaintiff has not suffered any injury due to the County's enactment of Ord. 23–33(13). The defendants' argument is frivolous and untenable.

The plaintiff first applied to the Delaware Commission for a license in December of 1978. At that time, New Castle County Ord. 23–31(38) prevented the plaintiff from obtaining a license. Since August of 1980, New Castle County Ordinance 23–33(13) has been in effect. From August of 1980 to the present, Amico has on numerous occasions attempted to secure a permit from New Castle County. During this period of time, Ord. 23–33(13) has prevented the plaintiff from receiving a state license. The Court concludes, therefore, that the plaintiff has standing to challenge Ord. 23–33(13). This particular ordinance has prevented the plaintiff from obtaining the necessary license for over two years. Further, it is possible that only if the Court holds Ord. 23–33(13) unconstitutional, would the plaintiff be able to open his adult entertainment center. The Court, consequently, will consider the constitutionality of both Ord. 23–31(38) [6] and 23–33(13).

## NEW CASTLE COUNTY ORDINANCE 23–31(38)

Basically, the plaintiff's argument that Ord. 23–31(38) is unconstitutional focuses on the requirement that an adult entertainment establishment may not be located "within 500 feet of any property used solely for residential purposes." The plaintiff argues that such a restriction violates the equal protection clause.[7]

---

**6.** The defendants concede that the plaintiff has standing to challenge Ord. 23–31(38). This ordinance, in effect from December of 1978 to August of 1980, prevented the plaintiff from using the premises at issue for the purposes he desired for a significant period of time.

**7.** Ord. 23–31(38) further restricts adult entertainment establishments to areas zoned C–1. The C–1 zoning classification (neighborhood shopping) is the broadest commercial zoning classification in that any use that is permitted in a C–1 zone is also permitted in the other commercial zones. According to the defendants, there are over 100 places under Ord. 23–31(38), where an adult entertainment establishment may be located. Consequently, although the plaintiff's briefs are unclear on this point, the Court will not discuss whether Ord. 23–31(38) is directly violative of the first and fourteenth amendments in that it restricts a citizen's access to protected non-obscene speech. Ord. 23–33(13), however, because it allows for the establishment of far fewer adult entertainment establishments, directly implicates the

It is not entirely clear what standard should be applied to zoning ordinances when tested against the equal protection clause. Most courts have used the test enunciated by Justice Powell in his concurring opinion in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). *See Genusa v. City of Peoria,* 619 F.2d 1203, 1214–15 (7th Cir. 1980); *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207, 1226 (N.D.Ga.1981) (*citing Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497, 502 (7th Cir.1980)), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). Justice Powell in *Young* stated:

[A] government regulation is sufficiently justified, despite its incidental impact upon First Amendment interest, "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on First Amendment Freedoms is no greater than is essential to the furtherance of that interest."

*Young v. American Mini Theatres, Inc.,* 427 U.S. at 79–80, 96 S.Ct. at 2456–57 (Powell, J., concurring), *citing United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

More recently, in *Schad v. Borough of Mount Ephriam,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), Justice White writing for the Court set out a different, although similar, test for determining the validity of zoning ordinances that affect first amendment liberties. Justice White stated the following:

[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest.... [t]he Court must not only assess the substantiality of the governmental interest asserted but also determine whether

those interests could be served by means that would be less intrusive on activity protected by the First Amendment.

452 U.S. at 68, 70, 101 S.Ct. at 2182, 2183. Further, the Supreme Court in *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) in the context of invalidating a municipal ordinance restricting the solicitation of charitable contributions, stated the following:

The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone...."

444 U.S. at 637, 100 S.Ct. at 836 (internal citations omitted).

These examples of the equal protection tests used in the first amendment area are all variations on a similar theme. All these tests require that the municipality demonstrate to the court that its zoning ordinance serves an important state interest and that the ordinance be narrowly drawn to serve that interest. *See Basiardanes v. City of Galveston,* 682 F.2d 1203, 1216 (5th Cir. 1982); *CLR Corp. v. Henline,* 520 F.Supp. 760, 768 (W.D.Mich.1981), *aff'd.,* 702 F.2d 637 (6th Cir.1983) (zoning regulations that affect first amendment rights must pass strict scrutiny type test; there must be underlying factual basis to support legislative body's conclusion that the ordinance, narrowly drawn, furthers important state interest which a narrower restriction will not).

Consequently, the Court first will examine the state interests that New Castle County contends justify Ord. 23–31(38) to determine whether they are important interests. Related to this, the Court must ascertain whether New Castle County acted upon a detailed factual predicate when promulgating Ord. 23–31(38). Stated differ-

first and fourteenth amendments. This issue will be discussed in a later section of the Opin-ion.

ently, the Court must determine if the asserted state interests have a basis in fact and if those facts were considered by the County when it enacted the ordinance. It is well established that the County must have relied upon a factual record when setting forth the reasons for enacting the ordinance for it to be constitutional. *See Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 661 (8th Cir.1981); *see also Basiardanes v. City of Galveston,* 682 F.2d 1203, 1215 (5th Cir.1982); *CLR Corp. v. Henline,* 520 F.Supp. 760, 765 (W.D.Mich.1981), *aff'd.,* 702 F.2d 637 (6th Cir.1983). The Court also must determine whether Ord. 23–31(38) is narrowly drawn or impermissibly broad. Throughout this discussion, the Court, mindful that this is a summary judgment proceeding, will accept the facts as they are set out in the defendants' briefs and affidavits.

In an affidavit submitted with the defendant New Castle County's Answering Brief in Opposition to the Plaintiff's Motion for Summary Judgment, New Castle County sets forth the intended purpose of Ord. 23–31(38).[8] The purpose of this ordinance, according to the affidavit was the following:

> . . . to prevent the concentration of adult entertainment centers in one area and to preserve the character of existing *neighborhoods.*

Defendants' Answering Brief at A–25 (emphasis added). Further, the County claims the ordinance was enacted "to minimize the negative effect of adult entertainment establishments on children." Defendants' Answering Brief at A–26. When enacting this ordinance, the New Castle County Planning Department relied on the following information:

(1) adult book stores caused decreases in property values;

(2) strangers filtered into the communities located near such establishments, which caused residents to feel unsafe;

(3) book store patrons parked their cars on neighborhood streets which caused parking problems;

(4) men were seen urinating and masturbating in the parking lots;

(5) trash, especially beer cans, was thrown from parking lots onto residential property; and

(6) automobiles and trucks of book store patrons were directly involved in accidents involving Midvale residents.

Defendants' Answering Brief at A–25–26.

The protection of neighborhoods and the protection of children from the negative effects of pornography are important state interests. *See Basiardanes v. City of Galveston,* 682 F.2d 1203, 1215 (5th Cir.1982). This Court also concludes, for purposes of this summary judgment motion, that the New Castle County Planning Department acted upon the basis of concrete facts when promulgating Ord. 23–31(38). Consequently, the Court next must decide whether Ord. 23–31(38) is narrowly drawn to further these important state interests.

New Castle County Ord. 23–31(38) states in pertinent part:

> *Massage Parlors which provide services on and/or off premises, adult book stores and adult entertainment centers shall not be permitted within 500 feet of any property used solely for residential purposes.*

■ The important state interests this ordinance is intended to further are the state's interest in preserving neighborhoods and protecting children. In deciding whether this ordinance is narrowly drawn to protect these interests, the defendant is not required to prove with scientific certainty that the state's chosen method of effectuating its intent is the narrowest possible way in which these goals could be accomplished. New Castle County, however, has failed to carry its burden of demonstrating that its ordinance is even rationally related to the goals of preserving neighborhoods and protecting children.

---

8. The affiant is Michael T. Melloy, a research assistant for the New Castle County Law Department, who relies on transcripts of the March 1, 1977 meeting of the New Castle County Planning Department as the source for his affidavit.

For example, New Castle County Ord. 23–31(38) would prevent a proprietor from opening an adult entertainment establishment if a residence occupied by a person is located within 500 feet of the proposed site of the building. This adult entertainment center could not be opened even if the proposed site was located in a heavily industrialized area. The center also could not be opened even if the residence within 500 feet of the proposed site contained no children. Nor could the center be opened even if there were no other residences within miles. The 500 foot restriction is overly broad because it acts to prevent the opening of an adult entertainment center in areas where there may be no children and because it prohibits the location of an adult entertainment center in areas where there are no neighborhoods. Consequently, the "500 feet of any property used solely for residential purposes" restriction is not narrowly drawn to protect the County's legitimate interests in protecting children and maintaining the integrity of neighborhoods. *See Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207, 1226 (N.D.Ga.1981). Although the County has propounded a rationale for its zoning ordinance, it has failed to demonstrate that the interests it has sought to protect are protected through a narrowly drawn ordinance.[9] *See Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir.1981) (municipality has burden of showing its ordinance is narrowly drawn).

The correctness of this analysis is borne out in the prior case law. When New Castle County promulgated Ord. 23–31(38), it was attempting to emulate the Detroit anti-pornography ordinance discussed in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). *See* Defendants' Answering Brief at 6; *De-*

*velopments in the Law—Zoning,* 91 Harv.L. Rev. 1427, 1556–57 (1978) (*Young* decision likely to motivate municipalities to enact similar statutes). Unfortunately, when the drafters of Ord. 23–31(38) modelled their statute after the Detroit zoning ordinance, they failed to realize that part of that Detroit ordinance had been declared unconstitutional.

In *Nortown Theatre, Inc. v. Gribbs,* 373 F.Supp. 363 (E.D.Mich.1974), *rev'd on other grounds,* 518 F.2d 1014 (6th Cir.1975), *rev'd sub nom. Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the United States District Court for the Eastern District of Michigan held unconstitutional that part of the Detroit zoning ordinance that prohibited the placement of an adult theatre within 500 feet of any residential dwelling or rooming unit. In declaring that part of the regulation unconstitutional, the District Court held that, because the regulation restrains conduct protected by the first amendment, the regulation must satisfy the strict scrutiny equal protection test. 373 F.Supp. at 369. Applying this standard to the facts, the court concluded:

> [N]o arguments are advanced by Defendants as to how the prohibition of the regulated uses within 500 feet of a single dwelling or rooming unit furthers the legitimate interest the City has in preserving a residential area or neighborhood. Indeed, where only a single dwelling or rooming unit is involved, we fail to see how the prohibition of the Ordinance affords any protection whatsoever to a neighborhood or residential area.

*Id.* at 369–70.

In *Young,* the Supreme Court did not overturn this portion of the district court's

---

**9.** The defendant New Castle County apparently, in its brief to the Court, misconceives the nature of the equal protection analysis. The County apparently argues that Ord. 23–31(38) is a valid restriction on adult entertainment centers because even under the ordinance, there are over 100 locations where a proprietor could locate an adult entertainment center. While the number of places where an adult entertainment center may be located is impor-

tant in determining whether the ordinance directly infringes on first amendment rights, *see, e.g., Young v. American Mini Theatres, Inc.,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35; *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir.1981), it is not an important factor in deciding whether an ordinance restricting first amendment rights violates the equal protection clause.

opinion. The Supreme Court stated the following:

> The District Court held that the original form of the 500-foot restriction was invalid because it was measured from "any building containing a residential dwelling or rooming unit." The city did not appeal from that ruling, but adopted an amendment prohibiting the operation of an adult theater within 500 feet of any area zoned for residential use. The amended restriction is not directly challenged in this litigation.

427 U.S. at 52 n. 2, 96 S.Ct. at 2443 n. 2. It is reasonable to assume that the drafters of Ord. 23–31(38) failed to realize that part of the Detroit ordinance was declared unconstitutional and later amended. Consequently, the drafters mistakenly copied an ordinance that could not withstand constitutional examination.

It appears that this same mistake occurred in Atlanta as is seen in *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207 (N.D. Ga.1981). The ordinance at issue in *Purple Onion* prevented adult businesses from locating "within 500 feet of the boundaries of ... property used for residential purposes." *Id.* at 1225. After noting that the drafters of the Atlanta ordinance probably were not aware of the *Nortown* decision, the Court stated the following:

> In light of the legitimate purposes of the Atlanta adult business zoning ordinance, that is, to preserve "surrounding residential segments of neighborhoods," ... this Court concludes that the rational relationship between those state interests and the 500-foot restriction from "property used for residential purposes" is negligible.... Accordingly, this portion of the ordinance must be stricken as a violation of equal protection.

*Id.* at 1226.

In sum, the 500-foot restriction embodied in Ord. 23–31(38) violates the equal protection clause of the fourteenth amendment. The Court holds that, as a matter of law, Ord. 23–31(38) is unconstitutional.

### NEW CASTLE COUNTY ORDINANCE 23–33(13)

■ Although the Court earlier determined that the plaintiff has standing to challenge Ord. 23–33(13) as well as Ord. 23–31(38), it is conceivable that the Court's decision that Ord. 23–31(38) is unconstitutional makes any further analysis *dicta.* The plaintiff originally applied for a Delaware license in December of 1978. At that time, it was New Castle County Ord. 23–31(38) that prevented the plaintiff from opening his adult entertainment center. By declaring that ordinance unconstitutional, the Court finds that Amico should have been able to open his business in December of 1978. Further, under Delaware law, if a business is already in existence when a contrary zoning ordinance is passed, that business cannot be affected by the new ordinance. *Minquadale Civic Assoc. v. Kline,* 42 Del.Ch. 378, 212 A.2d 811, 815–16 (1965).

Delaware, along with the vast majority of other states, will not allow a non-conforming business to remain in existence after a zoning ordinance is passed unless that business was open to the public at the time the new ordinance takes effect. *See, id.* Even if this Court determines, as it has, that Ord. 23–31(38) is unconstitutional and Amico should have been able to open his business in 1978, the fact remains that his business was not open to the public in August of 1980 when Ord. 23–33(13) was passed. Further, there is no guarantee that even if Amico had been able to open his business in December of 1978, he actually would have been open to the public before August of 1980. For these reasons, New Castle County may still require the plaintiff to conform with the amended ordinance, and, therefore, the Court must determine whether Ord. 23–33(13) is constitutionally infirm.

New Castle County Ord. 23–33(13) states in relevant part:

> Massage parlors which provide services on and/or off premises, adult bookstores and adult entertainment centers shall be permitted as follows:

(a) No such uses shall be permitted within 500 feet of any property used solely for residential purposes.

\* \* \* \* \* \*

(d) Prior to initiation of such uses, special permit to operate such uses shall be obtained from the County Council. Council shall grant such a permit following a public hearing if it is determined that neighborhood uses will not be detrimentally affected by granting such a permit and the proposed use meets the distance requirements cited in subsection 13(a), (b) and (c). Any person aggrieved by a decision of the County Council shall have the right of appeal to the Superior Court.

Further, the restriction limits the possible location of adult entertainment establishments to areas zoned C–3.

The plaintiff, Michael Amico, argues that Ord. 23–33(13), together with the alteration in zoning classification from C–1 to C–3, violates his first amendment rights and the rights of citizens of New Castle County. The plaintiff also contends that the 500–foot restriction in 23–33(13)(a) violates the equal protection clause. Finally, the plaintiff argues that the ordinance acts as an impermissible prior restraint on the exercise of first amendment rights.

The plaintiff argues that Ord. 23–33(13) impermissibly burdens first amendment rights in that it severely limits the number of adult entertainment establishments that may be opened in New Castle County. Citing to *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71 n. 35, 96 S.Ct. 2440, 2452 n. 35, 49 L.Ed.2d 310 (1976), the plaintiff argues that the ordinance unconstitutionally restricts access to adult entertainment centers.

■ At the heart of this argument is the number and the quality of possible locations of adult entertainment centers in New Castle County under Ord. 23–33(13). The Court finds that there are material factual disputes between the parties as to these issues that preclude the granting of summary judgment to the plaintiff on this issue.

*See Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters and Joiners,* 676 F.2d 81, 84 (3d Cir.1982) (where there is disagreement about facts or proper inferences to be drawn from facts, summary judgment is not appropriate). The Court, therefore, cannot at this stage of the proceedings decide whether Ord. 23–33(13) is unconstitutional because it impermissibly infringes on the first amendment.

■ The plaintiff next contends that the requirement that adult entertainment centers cannot be located "within 500 feet of any property used solely for residential purposes" violates the equal protection clause. This spacing requirement is precisely the same as the requirement that the Court found unconstitutional in Ord. 23–31(38). As was stated earlier, a zoning ordinance that impinges on first amendment rights must serve an important state interest and be narrowly drawn to further that interest. As was the case with Ord. 23–31(38), Ord. 23–33(13) is not narrowly drawn.

When enacting Ord. 23–33(13), the New Castle County Council stated the following:

Whereas, the presence of adult entertainment, massage parlors, and adult bookstores may have a deleterious effect on surrounding business; and

Whereas, the presence of the aforementioned activities are not compatible with other neighborhood business activities characteristically found in C–1 zones;

Whereas, the General Assembly has found (Title 23 *Delaware Code* § 1601) that the health, safety and welfare of the people of the State of Delaware are imperiled by the increasing incidents of the kinds of obscenity, prostitution and offenses related thereto, and that the foregoing crimes are principally facilitated by the widespread abuse of legitimate occupations and establishments, such as adult bookstores and massage establishments.

The above-quoted preamble clause of the ordinance is the only evidence of its purposes. This ordinance is, in essence, designed to (1) protect neighborhood businesses, and (2) protect the health, welfare and safety of the people of Delaware. It is

clear that the 500-foot restriction is not narrowly drawn to serve these purposes. First, the 500-foot restriction does not in any way serve to protect neighborhood businesses. Second, the defendant has not introduced any facts that would demonstrate that this 500-foot restriction is the narrowest way in which to promote the health, safety, and welfare of Delaware residents.[10] Consequently, Ord. 23–33(13) violates the equal protection clause for the same reasons as does Ord. 23–31(38) and is, therefore, unconstitutional.

■ The plaintiff further argues that Section (d) of Ord. 23–33(13) is an invalid prior restraint on the plaintiff's first amendment rights because it contains no meaningful standards for the County Council to follow in reviewing permit applications. Ord. 23–33(13)(d) prevents an adult entertainment center proprietor from opening his business even though he has satisfied the other provisions of the ordinance until he demonstrates to the County Council that the neighborhood will not be detrimentally affected by the issuing of the permit. Before examining the merits of the plaintiff's contention, the Court must first address the threshold issue of whether the plaintiff has standing to challenge the constitutionality of Ord. 23–33(13)(d).

Under 24 *Del.C.* § 1610(a),[11] any applicant for a Delaware state license to open an adult entertainment establishment must establish in his application that the location of his store will satisfy all local ordinances. Consequently, the plaintiff in order to obtain a state license must first obtain a special permit from New Castle County stating that he is in compliance with all county ordinances. The plaintiff has applied for this permit but the County has denied his application because his location is within 500 feet of an area used solely for residen-

tial purposes. Because he did not satisfy the distance requirement of Section (13)(a), Amico never was asked to appear before the County Council, as is required by Section (13)(d), to prove that his business would not detrimentally affect the surrounding neighborhood. Therefore, even though the Court has invalidated Section (13)(a), Amico will not obtain a license unless he appears before the County Council as required under Section (13)(d).

In *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649, the Supreme Court stated the following:

> In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.

*Id.* at 56, 85 S.Ct. at 737. Courts hearing challenges to statutes giving standardless discretion to administrative agencies when they issue licenses have not required that the plaintiff actually apply to that agency and that the agency turn down the plaintiff's application. *See, e.g., Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497, 500–01 (7th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981); *Genusa v. City of Peoria,* 619 F.2d 1203, 1217 (7th Cir.1980).

In the present case, the plaintiff has applied for a special permit. If the Court were to declare only 23–33(13)(a) unconstitutional, the plaintiff still would have to appear before the Council to prove that his use will not harm the neighborhood. Section (d) of this ordinance clearly could have a direct effect on the plaintiff's right to open his store because section (d) would still be a prerequisite to the granting of a spe-

---

**10.** It is clear that the County would have to state a more definite purpose than to promote the well-being of its citizens in order for this ordinance to pass constitutional muster. The County has to identify with specificity the purpose it intends to accomplish through its 500-foot restriction.

**11.** 24 Del.C. § 1610(a) reads in pertinent part:
[E]ach applicant or licensee seeking a license or renewal must affirmatively establish within their application that the location or proposed location of the place of business is in compliance with all applicable laws and ordinances.

cial permit. The Court concludes that the plaintiff has standing to challenge Ord. 23–33(13)(d). *See Genusa v. City of Peoria,* 619 F.2d 1203, 1217 (7th Cir.1980) (even where some plaintiffs did not apply for city licenses, plaintiffs have standing to challenge ordinances that allow city to deny license to someone who is not of good morals and reputation).

 Where an ordinance sets out standards to guide a licensing authority, the guiding principle is that the standards must be "narrow, objective and definite." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). In this case, Ord. 23–33(13)(d) is unconstitutional because it grants the licensing authority overly broad discretion to grant or deny the license. Section (d) gives the County Council the right to deny a license if the proposed use may detrimentally affect the neighborhood. The County Council is left to decide, without any guidance, what will detrimentally affect the neighborhood. Such discretion in the first amendment area is clearly not permissible. *See, e.g., Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 247, 2 L.Ed.2d 302 (1958); *Fantasy Book Shop, Inc. v. City of Boston,* 652 F.2d 1115 (1st Cir.1981); *414 Theater Corp. v. Murphy,* 499 F.2d 1155 (2d Cir. 1974); *Avon 42nd Street Corp. v. Myerson,* 352 F.Supp. 994 (S.D.N.Y.1972). Therefore, Section (d) of Ord. 23–33(13) is also unconstitutional as an improper prior restraint on the plaintiff's first amendment rights.

In conclusion, the Court holds that the 500 foot residential spacing requirement of Ord. 23–31(38) is unconstitutional and that Sections (a) and (d) of Ord. 23–33(13) are also unconstitutional.

The defendant New Castle County will be permanently enjoined from enforcing these sections of the ordinances (23–31(38) and 23–33(13)) to prevent the plaintiff from opening his adult entertainment establishment.

An Order will be entered consistent with this Opinion.