[No. 26475-7-II.   Division Two.   August 17, 2001.]

WASHINGTON PUBLIC EMPLOYEES ASSOCIATION, *Appellant*, v. THE PERSONNEL RESOURCES BOARD, ET AL., *Respondents*.

Mark S. Lyon (*General Counsel for Washington Public Employees Association*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Maureen A. Hart* and *Ann C. Essko, Assistants,* for respondents.

MORGAN, J. — In the second appeal in this case,[1] the question is whether the Office of Financial Management (OFM) must meet, confer, and negotiate with a union of state employees before disapproving, due to "fiscal impact," a salary increase that the Personnel Resources Board (the Board)[2] proposes to implement during the current biennial budget cycle. The answer is yes, unless the parties have already met, conferred, and negotiated on the same proposal.

In the fall of 1990, before but in preparation for the 1991-93 biennial budget cycle, the Washington Public Em-

---

[1] Our opinion in the first appeal is published at *Washington Public Employees Ass'n v. Personnel Resources Board*, 91 Wn. App. 640, 959 P.2d 143 (1998).

[2] As we note later in the main text, the State Personnel Board was renamed the State Personnel Resources Board in 1993. LAWS OF 1993, ch. 281, § 20. There is no material difference between the two boards for purposes of this case, so we will refer to them interchangeably as "the Board."

ployees Association (WPEA) proposed to OFM that the standby pay of its members "be increased by a factor of 3X under the calculation method set forth in WAC 356-15--080(3)[.]"[3] Alternatively, WPEA proposed that the standby pay of its members "be established at $1.75 per hour[.]"[4] WPEA asked that whichever alternative was adopted take effect July 1, 1991, the first day of the 1991-93 budget biennium.

WPEA and OFM "participated in four negotiation sessions[.]"[5] The purpose was to bargain the extent to which the director of OFM, also known as the state budget director, would recommend such an increase "for inclusion in the governor's budget proposal to the Legislature for the 1991-93 biennial budget[.]"[6] In early December 1990, OFM declined to recommend any increase.

WPEA turned to the Board. It did not ask the Board to find that OFM had refused to engage in collective bargaining. It did, however, ask the Board to amend WAC 356-15--080(3) either to set standby pay "at a $1.75 flat rate," or to increase standby pay "from two to five ranges under the calculation method."[7] It asked that whichever alternative was adopted take effect on July 1, 1991, "so that the Legislature would have an opportunity to fund the proposal in agency budgets."[8]

On January 10, 1991, the Board "voted to amend WAC 356-15-080(3), [by] providing an increase in the standby pay rule calculation method from two to four ranges, effective July 1, 1991."[9] OFM agreed to support the increase

---

[3] Clerk's Papers (CP) at 276 (Finding of Fact V).

[4] *Id.* (Finding of Fact V).

[5] *Id.* (Finding of Fact III).

[6] *Id.* (Finding of Fact IV).

[7] *Id.* at 277 (Finding of Fact X).

[8] *Id.* (Finding of Fact XI).

[9] *Id.* at 278 (Finding of Fact XV).

"if funding were provided . . . by the Legislature[.]"[10]

By June 1991, it was apparent that the legislature would not fund the requested increase. Thus, on June 26, 1991, OFM disapproved the Board's amendment as unfunded. OFM did not meet, confer, or negotiate with WPEA before issuing its disapproval. On July 11, 1991, the Board rescinded its amendment.

On August 12, 1991, WPEA filed the present complaint with the Board. The complaint alleged that OFM had a duty to meet, confer, and negotiate before disapproving the proposed increase in standby pay; that OFM had breached that duty; and thus that OFM had engaged in an unfair labor practice.[11]

On March 18, 1994, the Board held a hearing on WPEA's complaint. WPEA "argued that OFM had the obligation to bargain over proposed changes in the pay plan not only during the salary survey sessions and during the preparation of the executive budget, but also at any time during the year."[12] OFM argued that its only obligation was "to meet, confer and negotiate . . . about the salary survey and the preparation of the executive budget concerning salaries."[13]

On February 9, 1995, the Board held that "OFM's total bargaining obligation was over the matters within the scope of the salary survey";[14] that the Board's "change in standby pay was not part of the salary survey";[15] and that "OFM's decision not to approve the [Board's] change in standby pay was also not part of the salary survey."[16] The Board concluded that OFM "had no obligation to bargain the matter of standby pay with WPEA following the end of

---

[10] *Id.* (Finding of Fact XIV).

[11] *See* RCW 41.56.150(4), .06.340.

[12] CP at 279 (Finding of Fact XXVI).

[13] *Id.* at 280 (Finding of Fact XXVII).

[14] *Id.* at 280 (Conclusion of Law II).

[15] *Id.* (Conclusion of Law III).

[16] *Id.* (Conclusion of Law IV).

the normal *Ortblad*[17] negotiations in December, 1991."[18] The Board dismissed WPEA's complaint.

On March 10, 1995, WPEA filed a petition for review in superior court. OFM filed a motion to dismiss on procedural grounds, which the superior court granted. That generated the first appeal of this case, in which we reversed the dismissal and remanded for a determination on the merits.[19] On August 23, 2000, the superior court dismissed on the merits, and WPEA filed this second appeal.

Central to this appeal is the relationship among OFM, the Board, and state-employee labor unions. To understand that relationship, we examine its history.

In 1960, Initiative 207 was passed by the voters. Its purpose was "to establish for the state a system of personnel administration based on merit principles and scientific methods[.]"[20] It was codified as the State Civil Service Law, chapter 41.06 RCW.[21]

The new system included "[a] Department of Personnel, governed by a State Personnel Board and administered by a Director of Personnel[.]"[22] Years later, in 1993, the State Personnel Board was renamed the Personnel Resources Board.[23]

Section 14 of Initiative 207 required the Board to make rules and regulations providing for employee participation in how civil service jobs were classified and remunerated.[24] It provided:

---

[17] *Ortblad v. State*, 85 Wn.2d 109, 530 P.2d 635 (1975) (*Ortblad* I); *Ortblad v. State*, 88 Wn.2d 380, 561 P.2d 201 (1977) (*Ortblad* II).

[18] CP at 280 (Conclusion of Law V).

[19] *Wash. Pub. Employees Ass'n*, 91 Wn. App. 640.

[20] Laws of 1961, ch. 1, § 1.

[21] Laws of 1961, ch. 1, § 34.

[22] Laws of 1961, ch. 1, §§ 3 and 11(1). The initiative also abolished a preexisting board which, confusingly, had also been called the State Personnel Board. Laws of 1961, ch. 1, § 23.

[23] Laws of 1993, ch. 281, § 20. *See also* RCW 41.06.030.

[24] Section 14 was and is codified in RCW 41.06.140. It has never been amended.

It shall be the duty of the Board to make rules and regulations providing for employee participation in the development and administration of personnel policies. To assure this right, personnel policies, rules, classification and pay plans, and amendments thereto, shall be acted on only after the Board has given twenty (20) days notice to, and considered proposals from, employee representatives and agencies affected.[25]

Section 15 of Initiative 207 required the Board to "adopt and promulgate rules and regulations" for the "adoption and revision of a comprehensive classification plan for all positions in the classified service, based on investigation and analysis of the duties and responsibilities of each such position[.]"[26] It also required rules and regulations providing for the "adoption and revision of a state salary schedule to reflect not less than the prevailing rates in Washington State private industries and other governmental units for positions of a similar nature, such adoption and revision subject to approval by the State Budget Director in accordance with provisions of [chapter 43.88 RCW]."[27] Chapter 43.88 RCW directed that the State Budget Director "review any pay and classification plans, and changes thereunder, . . . for their fiscal impact"; and further, that the State Budget Director "may amend or alter said plans."[28]

Section 16 of Initiative 207 gave direction to the Board on how it should adopt and revise classification and salary schedules.[29] It provided:

In adopting or revising classification and salary schedules as set forth in section 15 the Board shall give full consideration to

[25] LAWS OF 1961, ch. 1, § 14.

[26] LAWS OF 1961, ch. 1, § 15. Section 15 was and is codified in RCW 41.06.150. It has been amended many times. *See* RCW 41.06.150(15), (17); WAC 356-14-010, -031. *See also Wash. Fed'n of State Employees v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 157 n.3, 164 n.6, 849 P.2d 1201 (1993).

[27] LAWS OF 1961, ch. 1, § 15; *Ortblad* I, 85 Wn.2d at 112.

[28] LAWS OF 1959, ch. 328, § 16(1)(c). This statute was originally codified as RCW 43.88.160(1)(c) (1961). It is currently codified as RCW 43.88.160(4)(e). *See also Ortblad* I, 85 Wn.2d at 113.

[29] Section 16 was and is codified as RCW 41.06.160. It has been amended several times.

prevailing rates in other public employment and in private employment in this state and for this purpose shall have made periodic wage surveys with one such survey to be conducted each year prior to the convening of each regular session of the state legislature, the results of such wage survey to be forwarded with a recommended state salary schedule to the Governor and State Budget Director for their use in preparing budgets to be submitted to the succeeding legislature.[30]

In 1966, the Board asserted its authority to conduct a periodic wage survey not just at the beginning of each biennial budget cycle, but whenever necessary. The Board provided, "[p]ursuant to its authority to revise salary plans,"[31] that "whenever the board or director find[s] it necessary in the administration of the plan, the director may accomplish additional wage surveys."[32] Years later, as discussed further below, the Supreme Court held that OFM had power to "review these interim adjustments to the salary schedules for 'fiscal impact' just as it reviews the full biennial plans."[33]

In 1967, the legislature passed the Public Employees' Collective Bargaining Act (PECBA), chapter 41.56 RCW.

---

[30] Laws of 1961, ch. 1, § 16.

[31] *Wash. Fed'n of State·Employees*, 121 Wn.2d at 159; *see also* RCW 41-.06.150(15), (17).

[32] Former WAC 356-08-185 (1966). In 1987, this regulation was recodified to state that "whenever the board or director find[s] it necessary, the director may conduct additional salary surveys and/or alignment studies to determine salaries, or whether salary changes are needed." WAC 356-14-060(1) (1987); *see Wash. Fed'n of State Employees*, 121 Wn.2d at 159. The 1987 regulation also narrowed the conditions under which Board could approve and implement the results of such a survey or study. Later legislation further narrowed the Board's authority to approve and implement. Laws of 1995, 2d Sp. Sess., ch. 18, § 911, and Laws of 1996, ch. 319, § 1.

[33] *Wash. Fed'n of State Employees*, 121 Wn.2d at 160. The statute authorizing OFM's review is presently codified as RCW 43.88.160(4)(e). The relevant part of it has not been changed since 1959. Laws of 1959, ch. 328, § 16; *Wash. Fed'n of State Employees*, 121 Wn.2d at 164 n.6. In 1987, the Board specifically recognized OFM's authority by adopting WAC 356-14-062. That regulation provides:

The board will not consider fiscal impact in determining salaries. However, salary changes are subject to approval by the director of the office of financial management in accordance with provisions of chapter 43.88 RCW.

Section 13 replicated section 15 of Initiative 207 in all respects pertinent here.[34] Apparently for that reason, section 13 of the PECBA was codified as part of the State Civil Service Law, chapter 41.06 RCW.[35]

In 1968, the Board's salary recommendation "was approved by the Budget Director and included in the Governor's 1969-71 biennial budget and in the funds appropriated by the legislature."[36] In 1970 and 1972, however, that did not happen. Instead, "recommendations from the Personnel Board to the Budget Director . . . [were] reduced before inclusion in budget requests, on the grounds of adverse 'fiscal impact.' "[37]

In 1973, in a case called *Ortblad v. State* (*Ortblad* I), several state employees and a state-employee labor union sued the director of OFM, then called the State Budget Director. They contested what probably were OFM's 1972 reductions by contending "that the Budget Director [was] without authority to alter, amend, or modify the salary plan advanced by the Personnel Board."[38] Relying on Initiative 207's section 15 (presently codified as RCW 41.06.150) and former RCW 43.88.160(1)(c) (1961) (presently codified as RCW 43.88.160(4)(e)), the Supreme Court held that "the Budget Director is not required to adopt automatically the salary plan recommended by the Personnel Board."[39] Relying in part on Initiative 207's section 14 (presently codified

---

[34] Insofar as pertinent here, section 13 provided:

The [State Personnel] board shall adopt and promulgate rules and regulations . . . for . . . adoption and revision of a state salary schedule to reflect not less than the prevailing rates in Washington state private industries and other governmental units for positions of a similar nature, such adoption and revision subject to approval by the state budget director in accordance with the provisions of chapter 43.88 RCW[.]

LAWS OF 1967, Ex. Sess., ch. 108, § 13.

[35] *See* RCW 41.06.150; RCWA Parallel Reference Tables at 26 (West Cumulative Supp. 1988).

[36] *Ortblad* I, 85 Wn.2d at 110.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 114.

as RCW 41.06.140), the Supreme Court also held that the Budget Director had a duty to bargain collectively before rejecting or reducing the Board's salary recommendations.[40]

In 1976, in another case called *Ortblad v. State (Ortblad II)*, the same plaintiffs sued for a writ of mandamus that would have compelled the State Budget Director to bargain more broadly than he wanted to. They contended that "bargaining must include the traditional scope of labor negotiations, i.e., wages, including fringe benefits, hours and working conditions."[41] The State responded that the Budget Director was required to bargain only on salary.[42] Agreeing with the State, the Supreme Court ruled that "the only subject about which the Budget Director must negotiate and bargain is those matters included within the salary survey."[43]

In 1993, in a case called *Washington Federation of State Employees v. Office of Financial Management* (hereafter *Washington Federation*), two unions sought to compel OFM to accept a salary increase proposed by the Board *during* a biennial budget cycle. On May 10, 1989, the legislature passed a 1989-91 operating budget that granted state workers an increase of 2.5 percent for fiscal year 1990 and an increase of 6 percent for fiscal year 1991. The next day, May 11, WPEA asked the Board to "increase certain state salaries as a means of redressing 'extreme salary inequities' between state and private employees."[44] The Board adopted WPEA's proposal, but OFM rejected it. The unions appealed, arguing that OFM had "unlawfully refused to implement an increase in the salaries of certain classified

---

[40] *Id.* at 119.

[41] *Ortblad* II, 88 Wn.2d at 382.

[42] *Id.*

[43] *Id.* at 382-83.

[44] *Wash. Fed'n of State Employees*, 121 Wn.2d at 154 (quoting CP at 721).

employees which had been authorized by" the Board.[45] Disagreeing, the Supreme Court ruled:

> The budget statute authorizes OFM to "amend or alter" both salary *and* classification plans *and* "changes thereunder" for their "fiscal impact." The personnel statute also reflects OFM's authority in this regard. *See* RCW 41.06.150(17). This statutory language permits precisely the type of discretion exercised by OFM in rejecting the 5 percent "catchup" increase. OFM's action constituted a decision by OFM to "amend or alter" a "change" to a state salary schedule on the basis of "fiscal impact."[46]

In the course of its discussion, the *Washington Federation* court recognized that "two separate but closely related procedures" had evolved with respect to civil service salaries.[47] "The ordinary procedure [was] for the Board, OFM, the Governor, and the Legislature to cooperate in incorporating a state salary schedule in the biennial budget."[48] Another procedure was for the Board to revise "salary schedules in the period between the adoption of the biennial budgets."[49] The Board did not consider the "fiscal impact" of its salary recommendations under either procedure.[50] Thus, OFM was to review "interim adjustments to the salary schedules for 'fiscal impact' just as it reviews the full biennial plans[,]"[51] thereby "ensuring that the state salary

---

[45] *Id.* at 154.

[46] *Id.* at 163-64.

[47] *Id.* at 157.

[48] *Id.*

[49] *Id.* at 159.

[50] *Id.* at 158. The court said:

Considerations of cost enter the decision-making process only through the review of the plans by OFM, the state budgetary authority. OFM is authorized by statute to review the plans submitted by the Board for "fiscal impact" and to "amend or alter" those plans if necessary.

*See also* WAC 356-14-062, quoted *supra* note 33.

[51] *Wash. Fed'n of State Employees*, 121 Wn.2d at 160.

schedule is compatible with the financial requirements of the state budget."[52]

■ The question in this case is related to, but different from, the question in *Washington Federation*. The question in *Washington Federation* was whether OFM could reject or reduce a proposal to increase salaries that the Board made midbiennium as opposed to prebiennium. The question here is whether the Board, before rejecting or reducing such a proposal, must bargain collectively with affected employees.

The parties dispute the answer to this question. WPEA argues that OFM has a duty to bargain collectively before rejecting or reducing *any* salary adjustment proposed by the Board; in its view, there is no difference between a proposal made prebiennium and a proposal made midbiennium. OFM distinguishes between the proposal made prebiennium and the proposal made midbiennium; in its view, it has a duty to bargain the former, but not the latter.

The statutes favor WPEA. OFM draws its authority to review a proposed salary increase in part from RCW 43.88.160(4)(e) (formerly RCW 43.88.160(1)(c) (1961)) and in part from RCW 41.06.150(17) (section 15 of Initiative 207). The former applies to a salary proposal made midbiennium,[53] as well as to a salary proposal made prebiennium.[54] The latter does also, for by its terms it provides that the "adoption *or revision*" of a salary schedule is subject to OFM's approval.

The cases favor WPEA. The *Ortblad* cases and *Washington Federation* equate the prebiennium proposal and the midbiennium proposal for purposes of OFM's power to review, and it is but a short step to equate them for purposes of OFM's obligation to bargain while conducting its review.

Principle favors WPEA. *Ortblad* I yielded two main holdings: (1) OFM can reject or reduce a salary proposal

---

[52] *Id.* at 159.

[53] *Id.*

[54] *Ortblad* I, 85 Wn.2d 109.

made before the beginning of the biennial budget cycle; but (2) OFM, before making any such rejection or reduction, must bargain with the affected employees. The principle underlying the second holding is that OFM cannot fairly review a salary increase without input from the affected employees, and that the employees are entitled to give their input.[55] That principle applies as much to a midbiennium proposal as to a prebiennium one, and thus it applies in this case.

OFM's primary argument is (1) that *Ortblad* II stated, "[T]he only subject about which the Budget Director must negotiate and bargain is those matters included within the salary survey";[56] and (2) that the salary survey is prepared only at the beginning of each biennium. When the *Ortblad* II court made that statement, however, it was ruling that the duty described in *Ortblad* I was a duty to bargain wages, but not a duty to bargain fringe benefits, hours, or working conditions. It was not ruling, or even considering, whether the duty described in *Ortblad* I encompassed wage proposals made midbiennium as well as wage proposals made prebiennium. It referred to the salary survey only because it happened to be considering a wage proposal made prebiennium, as an outgrowth of such a survey.

Although we hold that OFM's *Ortblad* I duty to meet, confer and negotiate extends to salary proposals made midbiennium, we do not hold that OFM is required to bargain any proposal that is the same or substantially the same as one already bargained for the same biennial budget cycle. On the contrary, we hold that OFM is required to bargain a proposal that is the same or substantially the same just once for any biennial budget cycle. Unfortunately, the record on appeal leaves us uncertain about whether WPEA's proposal to the Board in January 1991 was the same or substantially the same as its proposal to OFM in

---

[55] *See Ortblad* II, 88 Wn.2d at 383 ("State civil service employees are entitled to present their views, data and other matters which might bear upon the action ultimately taken by the Budget Director with regard to the salary survey.").

[56] *Ortblad* II, 88 Wn.2d at 382-83.

the fall of 1990. The Board did not make a finding of fact on that question, nor have the parties briefed it adequately on appeal.[57] Accordingly, we remand to the Board with the following directions: (1) The Board shall further consider, if either party so requests, the factual issue of whether WPEA's proposal to the Board in January 1991 was the same or substantially the same as WPEA's proposal to OFM in the fall of 1990. (2) If the Board finds that the two proposals were the same or substantially the same, it shall enter a finding of fact to that effect and again dismiss WPEA's complaint. (3) If the Board finds that the two proposals were different, it shall enter a finding of fact to that effect and reinstate WPEA's complaint.

The order appealed from is reversed, and the case is remanded to the Board for further proceedings.

HOUGHTON and QUINN-BRINTNALL, JJ., concur.

Review denied at 145 Wn.2d 1034 (2002).

---

[57] WPEA asserts the two proposals were different, but it fails to explain how. Br. of Appellant at 31. One of WPEA's staff members testified before the Board that the two proposals were "fairly close." Report of Proceedings (Mar. 18, 1994) at 20. The State fails to address the question at all.