[No. 32957.   Department One.   January 6, 1955.]

VERNÉR L. DOTSON *et al., Appellants,* v. PHILIP G. HADDOCK *et al., Respondents.*[1]

¹Reported in 278 P. (2d) 338.

*Heideman, Flanagan & Duncan,* for appellants.

*Eggerman, Rosling & Williams, Joseph J. Lanza,* and *Paul C. Gibbs,* for respondents.

HAMLEY, J.—This action was brought to recover damages for personal injuries sustained when plaintiff wife, Mrs. Beatrice Dotson, fell on the front steps of defendants' home. Judgment was entered for defendants on a jury verdict, and plaintiffs appeal.

The first question here presented is whether the trial court erred in determining, as a matter of law, at the close of appellants' case, that, on the occasion in question, Mrs. Dotson was a licensee rather than an invitee. The significance of this ruling lies in the fact that, if the jury had been permitted to find that Mrs. Dotson was an invitee, and had so found, liability could have been established by showing failure on the part of respondents to use ordinary care. *Kalinowski v. Y. W. C. A.,* 17 Wn. (2d) 380, 135 P. (2d)

852. In the case of a licensee, on the other hand, liability could be established only by showing a failure to exercise a less exacting degree of care, as discussed below.

The undisputed facts bearing upon Mrs. Dotson's status as an invitee or licensee are as follows: Both appellants and respondents were active members of the Christian citizenship committee of the University Baptist Church, in Seattle. The general purpose of the committee was to promote Christian principles of citizenship in the community. Membership on the committee was voluntary. Although some of the meetings were held in the church, usually one of the members would invite the committee to his home. At the last previous meeting of the committee, respondents had invited the committee to have its next meeting at their home. In doing so, they indicated that this would make it easier for respondents, as they would not then be required to hire a baby sitter that night. The members received no compensation, either for their work on the committee or for allowing the meeting to be held in their homes.

The meeting in question, which was held on the evening of September 19, 1952, was a regular monthly meeting of this committee. In addition to a discussion of means of raising funds for helping a missionary and making arrangements for a series of church programs for the following month, the members listened to a book review, and were served refreshments by respondents.

We have defined an invitee to be one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged, or which he permits to be conducted thereon. To establish such relationship, there must be some real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates. *Garner v. Pacific Coast Coal Co.,* 3 Wn. (2d) 143, 100 P. (2d) 32; *Schock v. Ringling Bros. and Barnum & Bailey Combined Shows,* 5 Wn. (2d) 599, 105 P. (2d) 838; *Kalinowski v. Y. W. C. A., supra; Deffland v. Spokane Portland Cement Co.,* 26 Wn. (2d) 891, 176 P. (2d) 311.

In the cases cited above, a licensee has been defined as one who goes upon the premises of another, either without any invitation, express or implied, or else for some purpose not connected with the business conducted on the land, but goes, nevertheless, with the permission or at the toleration of the owner.

Mrs. Dotson was on the premises under an express invitation. However, the fact of invitation alone is not sufficient to make one an invitee. A social guest may be expressly invited onto the premises, but, nevertheless, is considered a licensee. *McNamara v. Hall,* 38 Wn. (2d) 864, 233 P. (2d) 852.

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to appellants, there is no showing that respondents received, or had any expectation of receiving, any personal benefit, other than spiritual or humanitarian, from the church or the committee. They received compensation neither for their work on the committee nor for allowing the meeting to be held in their home. We are of the opinion that, before a person may attain the status of an invitee, it must be shown that the business or purpose for which the visitor comes upon the premises is of material or pecuniary benefit, actual or potential, to the owner or occupier of the premises. This requirement has been given implicit recognition by this court in prior cases. See *Kinsman v. Barton & Co.,* 141 Wash. 311, 251 Pac. 563; *Christensen v. Weyerhaeuser Tbr. Co.,* 16 Wn. (2d) 424, 133 P. (2d) 797.

Appellants argue that, since the meeting was held at respondents' home, for their convenience and benefit to save them the expense of hiring a baby sitter, appellant wife met all the qualifications of an invitee on this occasion. We must agree with respondents that such an incidental benefit will not be sufficient to characterize the visitor as an invitee. See *Mitchell v. Legarsky,* 95 N. H. 214, 60 A. (2d) 136; *Cosgrave v. Malstrom,* 127 N. J. L. 505, 23 A. (2d) 288; 25 A. L. R. (2d) 605.

The cases of *Collins v. Hazel Lbr. Co.,* 54 Wash. 524, 103 Pac. 798, and *Hanson v. Spokane Valley Land & Water Co.,*

58 Wash. 6, 107 Pac. 863, are distinguishable. Although the plaintiff in each of those cases was termed an "invitee," with no apparent showing of even potential benefit of the nature discussed above, the imposition of liability, under the circumstances there presented, rests upon a basis wholly independent of that which governs the present case.

Those decisions are based upon the principle that, if the possessor of land maintains a private way over his land, under such circumstances as to induce a reasonable belief by those who use it that it is public in character, he is under a duty to exercise reasonable care to maintain it in a reasonably safe condition for travel. See *Gasch v. Rounds,* 93 Wash. 317, 160 Pac. 962; 20 A. L. R. 202; 2 Restatement of Torts, § 367 (1934).

Neither *Heckman v. Sisters of Charity,* 5 Wn. (2d) 699, 106 P. (2d) 593, nor *Kalinowski v. Y. W. C. A.,* 17 Wn. (2d) 380, 135 P. (2d) 852, is inconsistent with the conclusion which we have reached. The court, in the *Heckman* case, *supra,* held that where a charitable hospital held a "capping ceremony" to honor student nurses who had attained a certain grade in their course, and such nurses were permitted to invite friends and relatives to witness the ceremony, the relationship of invitor and invitee existed between the hospital and the persons so invited. An analysis of the reasoning by which the court reached that conclusion indicates to us that the court impliedly recognized the necessity for finding that the presence of friends and relatives of the student nurses at the capping ceremony was of at least potential benefit, of a material or pecuniary nature, to the hospital.

In the *Kalinowski* case, *supra,* the court's determination that the plaintiff was an invitee was *dictum,* since the court held the evidence was insufficient to establish that the defendant was negligent toward the plaintiff, or failed in its duty to her in any way. However, even if this determination were not *dictum,* we do not believe that the decision may be interpreted as authority for a rule obviating the necessity of finding at least potential benefit, of the nature discussed above.

We therefore conclude that the trial court correctly ruled that appellant wife was a licensee.

The next question presented relates to the instructions given and refused regarding the applicable duty of care, under the facts of this case. Those facts, in so far as here relevant, are as follows:

On the evening in question, Mrs. Dotson arrived at the home of respondents sometime between 8:00 and 8:30 p. m. There was evidence that it was getting quite dark, and Mrs. Dotson testified that it was sufficiently dark so that the steps were not clearly discernible as she went into respondents' home. There were four or five other people with her when she arrived. Neither she nor the others encountered any difficulty in walking up the steps, nor is there any evidence that anyone, other than Mrs. Dotson, experienced any trouble in descending the steps at the conclusion of the meeting.

When the meeting adjourned at approximately 10:30 p. m., Mrs. Dotson left respondents' home in the company of another member of the committee. When they reached the second or third step from the bottom of the cement steps, which lead from the level of the yard to the cement sidewalk abutting on the street in front of the house, Mrs. Dotson started to fall. Her companion, being unable to prevent the fall, released her grasp on Mrs. Dotson's arm. She fell to the cement sidewalk, landing on her right foot in such a manner that she fractured her right ankle in three places. Mrs. Dotson testified that she stepped on something which was other than the regular face of the step, and that it "felt like a hole." At the time of the fall, the porch light was on, but the illumination afforded by it did not extend to the steps in question. There were no street lights which illuminated the steps.

As to the condition of the steps, the jury could have reasonably concluded, from the evidence introduced, that the steps were in general disrepair, and that one of the steps fairly close to the bottom of the flight had a broken edge and the surface was broken out about halfway back from the front edge, leaving an uneven, crumbly surface. It also sloped a little to the front. It was admitted that respond-

ents had previous knowledge of this condition. It had been in existence when they moved into the home three years previously, and had become progressively a little worse since that time.

It was admitted that, on previous occasions, respondents had warned other people leaving their home about the defective condition of the steps. The testimony of both appellants was to the effect that neither of them had any knowledge of the condition prior to the evening in question, and that no warning was given to them on that evening. Respondent Philip Haddock could not recall whether he had ever warned appellants of the condition.

On these facts, the court declined to give appellants' proposed instruction No. 19, which reads as follows:

"If you find from the evidence that at the time and place she was injured, the plaintiff wife was on the defendants' premises as a licensee as distinguished herein from an invitee, and if you further find that the lower flight of steps leading from the public sidewalk to the defendants' premises were in a defective condition and constituted a concealed danger and that the defendants knew that said condition existed and would not be apparent to the plaintiff while using said steps, but failed to warn the plaintiff of said concealed danger, then such failure on the defendants' part would amount to negligence, and if you find that as a proximate result thereof the plaintiff sustained injuries while using said steps for the purpose for which they were intended, your verdict should be for the plaintiff."

Instead, the trial court, having determined that Mrs. Dotson was a licensee, gave the following instruction No. 4:

"The basis of this action is wanton negligence. The plaintiffs are not entitled to recover merely because there has been an accident, but must prove, by a preponderance of the evidence, that the defendants were guilty of wanton negligence, which so far as this case is concerned means a reckless disregard for the safety of the person injured; that such wanton negligence was the proximate cause of plaintiffs' damage, if any, and the amount of such damage . . . ."

■ It has been repeatedly held by this court that, as to a licensee, the owner or occupant of land owes only the

duty of not wilfully or wantonly injuring him. *Garner v. Pacific Coast Coal Co.,* 3 Wn. (2d) 143, 100 P. (2d) 32; *Schock v. Ringling Bros. and Barnum & Bailey Combined Shows,* 5 Wn. (2d) 599, 105 P. (2d) 838; *Deffland v. Spokane Portland Cement Co.,* 26 Wn. (2d) 891, 176 P. (2d) 311; *McNamara v. Hall,* 38 Wn. (2d) 864, 233 P. (2d) 852.

Appellants concede that the instruction given accords with the general rule, but argue that, as an exception to this rule, the occupier of land has a duty to warn licensees of concealed dangers on the premises. In support of this position, appellants refer to the following language to be found in our decision in *Christensen v. Weyerhaeuser Tbr. Co.,* 16 Wn. (2d) 424, 133 P. (2d) 797:

"It is the rule in this state that the only duty which the owner of premises, or the proprietor of a business conducted thereon, owes to a mere licensee is the duty not to injure such licensee wantonly or willfully. *Buttnick v. J. & M., Inc.,* 186 Wash. 658, 59 P. (2d) 750; *Garner v. Pacific Coast Coal Co., supra; Schock v. Ringling Bros. and Barnum & Bailey Combined Shows,* 5 Wn. (2d) 599, 105 P. (2d) 838. The rule as thus expressed does not exclude liability on the part of the owner or proprietor for extraordinary concealed perils against which the licensee cannot protect himself, or for unreasonable risks incident to the possessor's activities. Such exceptional circumstances, however, are not involved here." (p. 432)

The reference, in the last sentence quoted above, to possible liability on the part of the owner or proprietor for "extraordinary concealed perils," against which the licensee cannot protect himself, was not necessary to the decision in that case. *McNamara v. Hall, supra.* Neither in the latter case nor in any other have we been called upon to decide whether this suggested refinement of, or exception to, the general rule limiting liability as to licensees to wanton or wilful injury obtains in this state.

Nor are we called upon to decide that question in this case, since appellants' proposed instruction in no sense invokes this suggested basis of liability. The reference in the *Christensen* case is to "extraordinary concealed perils." As respondents point out, this connotes something excep-

tionally dangerous—out of the ordinary—a danger which is not frequently encountered. In our opinion, it must be such a danger and so concealed that a failure to warn concerning it must be regarded as wanton or wilful.

The proposed instruction makes no reference to "an extraordinary concealed peril," but only to a "defective condition" of the steps and a "concealed danger." Any defect in a walk or step, however slight, is a potential danger, and, if obscured by darkness, is concealed. The *Christensen* case does not suggest that there should be liability in such a case.

■■ In failing to make this differentiation in their proposed instruction, appellants failed to bring themselves under the refinement or exception suggested in the *Christensen* case. The trial court was under no duty to reframe the proposed instruction. Accordingly, we do not reach the question of whether the refinement of, or exception to, the general rule, as suggested in *Christensen v. Weyerhaeuser Tbr. Co., supra,* is to be recognized and applied in this state.

Appellants call attention to 2 Restatement of Torts, 932, § 342, wherein the following rule is set out:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

(i) to make the condition reasonably safe, or
(ii) to warn them of the condition and the risk involved therein."

The Restatement does not state the rule concerning the duty which an occupier or owner of land owes to a licensee in terms of wilful or wanton injury. Nor does it refer to "extraordinary concealed perils," but rather to an "unreasonable risk." But, again, we need not decide whether the rule, as set out in the Restatement, is to be recognized

in this state, since appellants' proposed instruction does not invoke the Restatement rule.

The proposed instruction speaks only of a "concealed danger"—not an "unreasonable risk." It refers only to knowledge of a condition on the part of respondents—and leaves out realization, on their part, that the condition involves an unreasonable risk. It speaks of failure to warn —but omits the qualifying phrase "without exercising reasonable care" to so warn. We, therefore, conclude that the proposed instruction finds no support in the Restatement of Torts.

Appellants make reference to several decisions from other jurisdictions. In general, these decisions seem to sanction the form of concealed danger rule suggested in the *Christensen* case and in the Restatement. In so far as such decisions tend to support a less rigid rule, they are definitely out of harmony with the established law of this state. We are not disposed to sanction such a departure from our present rule.

The trial court did not err in refusing to give proposed instruction No. 19.

The remaining question is whether the trial court erred in giving the part of instruction No. 4, quoted above, restricting respondents' liability to "wanton negligence." In view of what is said above, and appellants' failure to propose an instruction incorporating, for the court's consideration, the suggestion advanced in the *Christensen* case, or the rule set forth in the Restatement, it is our view that the trial court did not err in giving this instruction.

The judgment is affirmed.

GRADY, C. J., MALLERY, FINLEY, and OLSON, JJ., concur.

February 18, 1955. Petition for rehearing denied.