[No. 35414. Department One. February 2, 1961.]

LORAN W. WARD, *Respondent*, v. VICTOR S. THOMPSON
*et al., Appellants.*[1]

¹Reported in 359 P. (2d) 143.

*Neal, Bonneville & Hughes,* for appellants.

*Tollefson & Tollefson,* for respondent.

DONWORTH, J.—This is an appeal from a judgment entered by the Superior Court of Pierce County in favor of Loran W. Ward (hereinafter called respondent) against Victor S. and Marlyss Thompson, husband and wife (hereinafter called appellants), in the amount of $6,653.02. The award was for personal injuries sustained by respondent when a scaffold on which he was standing collapsed.

The fact pattern, as found by the trial court, is substantially as follows:

Respondent is the stepfather of appellant husband. On May 28, 1957, appellants were in the process of building a new home for their own use. At that time, appellants were not living on the premises. Although not a builder by trade, appellant husband performed much of the construction work himself. On the day in question, appellant husband telephoned his mother and invited both her and his stepfather over to the construction site, adding that "you can give me a lift," or words to that effect. Respondent, it should be noted, was employed by the city water department and was inexperienced in either building or construction work.

After his arrival on the premises (the site of the new house), respondent, as requested, began assisting appellant husband by pulling out nails from some lumber. Meanwhile, appellant husband was standing on a scaffold, which he had built himself, about four feet above the ground. He was doing so for the purpose of nailing sheeting to an outside wall of the house. In performing this task, appellant husband felt that he needed some help in holding a long piece of siding in place while he nailed it to the wall. He asked respondent if he would mount the scaffold and assist him. Before doing so, respondent had noticed that one or

more nails used to fasten one of the three A-frame supports under the scaffold platform were partially "pulled out." Prompted by what he saw, respondent asked appellant husband whether "he was sure that scaffolding was strong enough for the two of us." Appellant husband answered that it was. However, respondent did not inform him of the specific nature of the defect which he (respondent) had noted. Once reassured by appellant husband concerning the strength of the scaffold, respondent mounted it. Shortly thereafter, the scaffold collapsed and respondent was injured.

The amount of the damage award by the trial court (the case was tried by the court without a jury) is not questioned.

There are two basic issues relating to liability which are raised by appellants on appeal: (1) The legal status (licensee or business invitee) of respondent on appellants' premises, and (2) the question of contributory negligence arising from respondent's failure to point out to appellant husband the specific defect in the scaffold construction alluded to above.

■ As to the matter of respondent's legal status, it is amply clear, based on the undisputed facts, that respondent was a business invitee. It is generally acknowledged that an occupier of land owes a greater duty to invitees than to licensees, principally with respect to the inspection and discovery of hidden dangers and defects on his land. The problem is not so much what duties are owed to an invitee, but, rather, who qualifies as an invitee. Broadly speaking, there are two tests: (1) The economic benefit test, and (2) the invitation test. The test set forth in 2 Restatement, Torts, 897, § 332, defines a business visitor as

" . . . a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

This is generally interpreted to mean that some economic benefit (though it may be indirect) must be conferred upon the occupier by the visit. To date, the economic benefit test seems to have prevailed in this state.

To attain the status of an invitee, this court held, in the case of *Dotson v. Haddock,* 46 Wn. (2d) 52, 278 P. (2d) 338 (1955), that

". . . it must be shown that the business or purpose for which the visitor comes upon the premises is of material or pecuniary benefit, actual or potential, to the owner or occupier of the premises."

See, also, *Kinsman v. Barton & Co.,* 141 Wash. 311, 251 Pac. 563 (1926); *Christensen v. Weyerhaeuser Tbr. Co.,* 16 Wn. (2d) 424, 133 P. (2d) 797 (1943). Cf. *Porter v. Ferguson,* 53 Wn. (2d) 693, 336 P. (2d) 133 (1959).

The alternative method for determining who qualifies and who does not qualify as an invitee is the so-called invitation test. While this second test may involve economic benefit, it does not require it. According to Harper and James, The Law of Torts, Vol. 2, p. 1478, § 27.12, the invitation test is predicated on the fact

". . . that the occupier by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. . . .'"

citing *Sweeny v. Old Colony & Newport R. Co.,* 10 Allen 368, 373-374, 87 Am. Dec. 644, 648 (Mass. 1865), and *Guilford v. Yale University,* 128 Conn. 449, 452-454, 23 A. (2d) 917, 918-919 (1942).

The authors hasten to add, however, that this second test has not been construed to include purely social visitors, and has been principally applied in situations where the premises were prepared to attract the public, *e.g.* stores, railway stations, bathing beaches, etc.

However, regardless of which test we apply, respondent qualifies as an invitee. He was not only invited upon *appellants'* premises for the economic benefit of appellants, but was specifically requested to mount the scaffold for the purpose of aiding appellants in the construction of

their house. The fact that respondent was not paid for his services is of no consequence under either of the above tests. At most, economic benefit to the occupier is required, and, at the very least, respondent conferred it in this case.

In both the *Dotson* and *Ferguson* cases, cited above, this court held that the respective plaintiffs were licensees as a matter of law. However, on their facts, those cases differ markedly from the case at bar.

In the *Dotson* case, the plaintiff was attending a church committee meeting held at the home of one of the committee members. In no manner of speaking could it be said that there was any economic benefit passing from the injured party to the occupier of the premises; nor were the premises arranged for public accommodation even in the broadest sense of that term.

In the *Ferguson* case, this court stated, at page 694, that

"The trial court found that the plaintiffs were not business invitees, but on the contrary were licensees. This was predicated upon the proposition that the occasion of the visit was *social* and not commercial or contractual in nature. . . . " (Italics ours.)

It goes almost without saying that a nonsocial visit need not necessarily be a "commercial" or "contractual" one, *e.g.* a trespass. Be that as it may, in the case before us, respondent's presence on the scaffold was assuredly not social. Respondent was on the scaffold to work in behalf of appellants at their request. That respondent may have been motivated to mount the scaffold by reason of friendship or parental devotion is irrelevant. Respondent was there to work and not to play. An economic benefit most certainly passed from respondent to appellants. For these reasons, respondent was an invitee, rather than a licensee, within the legal  meaning traditionally ascribed to those terms, and the trial court, in so finding, was, therefore, correct.

■ But aside from the technicalities of respondent's legal status, in our view, appellants owed a duty to maintain the scaffolding in a reasonably safe condition, and this duty extended to *all* persons standing thereon with the permission, express or implied, of appellants. By their very nature,

any substantial defects in the construction of a scaffold necessarily involve recognizable risks of serious bodily harm to any persons standing on it. *Cf. Straight v. B. F. Goodrich Co.*, 354 Pa. 391, 47 A. (2d) 605 (1946).[2] The duty of appellants to maintain the scaffold in a reasonably safe condition cannot be abrogated or altered on the basis of timeworn distinctions between licensees and invitees. *Cf. Mills v. Orcas Power & Light Co.*, 56 Wn. (2d) 807, 355 P. (2d) 781 (1960). Where the danger of harm is great, as it is with scaffolds, ladders, and the like, public policy requires that the occupier of the premises take the utmost precaution to keep such equipment in a safe condition.

■ The second issue raised by appellants, that of contributory negligence, requires considerably less discussion. Appellants contend that respondent should be precluded from recovering a judgment against them, by reason of the fact that respondent noted that one or more of the nails used to fasten one of the three A-frame supports were partially "pulled out" and failed to convey this information to appellant husband before mounting the scaffold. Instead, as we stated before, respondent asked appellant husband if he was certain that the scaffold was sufficiently strong to hold both men. Uncontroverted evidence was introduced indicating that appellant husband, in answer to respondent's query, assured respondent that the scaffold was of adequate strength to withstand their combined weight. This evidence sufficed, at the very least, to raise a question of fact upon which reasonable minds could differ, to wit: Under the surrounding circumstances, did respondent act as a reasonably prudent man? — the applicable test for determining the issue of contributory negligence. *Hynek v. Seattle*, 7 Wn. (2d) 386, 111 P. (2d) 247 (1941), and *Farrow v. Ostrom*, 10 Wn. (2d) 666, 117 P. (2d) 963 (1941).

In that appellant-defendant rested at the close of respondent-plaintiff's case, it is only the admission of respond-

---

[2]The *Straight* case actually involved an elevator company's employee who was struck by a top-heavy, unattached, one-hundred-pound radiator which was placed in a precarious position by the occupier of the building in which the employee was working.

ent, referred to above, which supports appellants' allegation of contributory negligence. In our view, the trial court correctly determined that respondent's failure to call appellant husband's attention to this matter (that of the partially exposed nails) did not constitute contributory negligence as a matter of law.

In the alternative, appellants argue that the trial court erred in declining to apply the maxim of *volenti non fit injuria*. The only significant distinction between this maxim and the doctrine of assumption of risk is that the application of the latter is limited to cases arising out of contractual relationships or the relationship of master and servant. See *Ewer v. Johnson*, 44 Wn. (2d) 746, 270 P. (2d) 813 (1954).

The only argument set forth by appellant in favor of the application of the maxim is that

" . . . the respondent knew that the scaffolding was in a defective or weakened condition; he appreciated the fact that this might make it unsafe for the proposed use, and he voluntarily consented to expose himself to the danger."

However, evidence offered by respondent to indicate that appellant husband had specifically assured him of the adequacy of the scaffold, refutes appellants' contention—the same evidence which serves to defeat the contention of contributory negligence.

The judgment, therefore, is in all respects affirmed.

MALLERY, WEAVER, OTT, and HUNTER, JJ., concur.